

CLERK'S OFFICE
A TRUE COPY
Jan 28, 2025
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☐ Original          ☐ Duplicate

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No.  25-M-324 (SCD)
a White, 2024, Ford F-150 Lightening bearing VIN )
number 1 FTVW3LK9RWG06118 ( "Target Vehicle #1" ) )
and a White, 2014, Jeep Grand Cherokee bearing VIN )
number 1 C4RJFBG1 EC532090 ( "Target Vehicle #2" ) )

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before  2-11-25  *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.  ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable Stephen C. Dries_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   1-28-25. 8:50 am                    *Stephen C. Dries*
                                                                          *Judge's signature*

City and state:   Milwaukee, WI                    Honorable Stephen C. Dries, U.S. Magistrate Judge
                                                                       *Printed name and title*

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

The property to be searched is a White, 2024, Ford F-150 Lightening bearing VIN number 1FTVW3LK9RWG06118 ("**Target Vehicle #1**") and a White, 2014, Jeep Grand Cherokee bearing VIN number 1C4RJFBG1EC532090 ("**Target Vehicle #2**").

## <u>ATTACHMENT B</u>

*Items to be Seized*

Evidence relating to violations of Title 21, United States Code, Sections 841 and 846, including but not limited to:

1.  Marijuana, and any other controlled substance, packaging materials and materials used to prepare heroin and other controlled substances for distribution, controlled substances paraphernalia, and other contraband related to drug trafficking and distribution;

2.  Firearms including pistols, handguns, shotguns, rifles, assault weapons, machine guns, magazines used to hold ammunition, silencers, components of firearms including laser sights and other components which can be used to modify firearms, ammunition and ammunition components, bulletproof vests, and any and all documentation related to the purchase of such items;

3.  Proceeds of drug trafficking activities, including United States Currency, financial instruments, jewelry, documents and deeds reflecting the purchase or lease of real estate, vehicles, jewelry or other items obtained with the proceeds from organized criminal and drug trafficking activities;

4.  Drug or money ledgers, drug distribution or customer lists, drug supplier lists, correspondence, notations, logs, receipts, journals, books, records and other documents noting the prices, quantity, and/or times when controlled substances were obtained transferred or sold distributed, and/or concealed;

5.  Indicia of occupancy or ownership of the vehicle and things described in the warrant, including but not limited to bills, loan payment receipts, lease or rental agreements, and keys.

2

6. Cellular telephones and all electronic storage areas on the device including text messages, contact lists, digital video recordings or other areas that may contain evidence of drug trafficking or firearm possession or use.

7. Stored electronic data, information, images, and related digital storage, and/or vehicle diagnostic data from electronic systems within either Target Vehicle, including, but not limited to data regarding: unique device identifiers; media files; call logs; contacts; SMS; Bluetooth connections; USB connections; voice commands; voice recordings; voice calling; web browser history; Wi-Fi connections; speech recognition; time updates; track logs; traction events; traffic updates; stop/start log; GPS warnings; hard acceleration; hard braking; light status; odometer reading; gear shifts; historical navigation data;  historical speed data; historical event data; and data streaming services and related content.

For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

3

c.  evidence of the lack of such malicious software;

d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h.  evidence of the times the COMPUTER was used;

i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.  records of or information about Internet Protocol addresses used by the COMPUTER;

l.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.  contextual information necessary to understand the evidence described in this attachment.

4

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies). The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware. The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media. This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

CLERK'S OFFICE
A TRUE COPY
Jan 28, 2025
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*
a White, 2024, Ford F-150 Lightening bearing VIN
number 1FTVW3LK9RWG06118 ( "Target Vehicle #1" )
and a White, 2014, Jeep Grand Cherokee bearing VIN
number 1C4RJFBG1EC532090 ( "Target Vehicle #2" )

)
)
)
)
)
)

Case No. 25-M-324 (SCD)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A,

located in the _____Eastern_____ District of _____Wisconsin_____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841 and 846 | Distribution of controlled substances; possession of controlled substances with intent to distribute; conspiracy |

The application is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

James Buck, FBI Special Agent
*Printed name and title*

Sworn to before me and Telephonically

Date: 1-28-25

_____
*Judge's signature*

City and state: Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF A SEARCH
# WARRANT

I, James Buck, being first duly sworn, hereby depose and state a follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant authorizing the search for and seizure of evidence, including electronically stored information, as particularly described in Attachment B, within the White, 2024, Ford F-150, bearing VIN number 1FTVW3LK9RWG06118 currently located at the Milwaukee County Sheriff's Office, 10320 W. Watertown Plank Road, Wauwatosa, WI (**Target Vehicle #1**), and within the White 2014 Jeep Grand Cherokee, bearing VIN number 1C4RJFBG1EC532090 currently located at the Milwaukee County Sheriff's Office, 10320 W. Watertown Plank Road, Wauwatosa, WI (**Target Vehicle #2**).

2.  I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since June 2023. Since June 2023, I have been assigned to FBI's Milwaukee Area Safe Streets Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including gang matters, and other violent crime matters, defined under Title 18 of the United States Code. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have participated in criminal investigations, surveillance, search warrants, cellular telephone extractions, vehicle processing, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why drug traffickers typically conduct various aspects of their criminal activities.

3.  Based on the investigation to date, I believe there is probable cause that Jerald P. CAMPBELL (B/M XX/XX/1996) and MALIK NICHOLS (B/M XX/XX/1996), conspired to traffic controlled substances, including marijuana and cocaine, from approximately March 1, 2023 through approximately October 2, 2024, in violation of Title 18, United States Code, Sections 841 and 846. Indeed, both have already been indicted for the same, in *United States v. Williams, et al.*, No. 24-cr-201. There is also probable cause to search the Target Vehicles described in Attachment A for evidence of these crimes as further described in Attachment B.

4.     This affidavit is based upon my personal knowledge, training, and experience, and on information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.  This affidavit is also based upon police reports, official records, witness statements, search warrants, recorded statements, surveillance video, social media, and public records which I consider to be reliable as set forth herein.

5.     This affidavit is submitted for the limited purpose of obtaining a search warrant, therefore, I have not included each and every fact known to me concerning this investigation.  I have attempted to set forth only the facts that I believe are pertinent to establishing the necessary foundation for the search warrant.

## PROBABLE CAUSE

6.     On October 1, 2024, arrest warrants were issued for CAMPBELL and NICHOLS by a United States Magistrate Judge for the Eastern District of Wisconsin, pursuant to a complaint captioned 24-MJ-187. The affidavits submitted in support of that complaint is incorporated here by reference.

### Target Vehicle #1

7.     As described in the affidavit, case agents observed CAMPBELL routinely traffic marijuana, utilizing numerous vehicles to transport controlled substances to and from the narcotics/marijuana stash house located at 1810 W Atkinson Avenue, Milwaukee, Wisconsin. Case agents found that CAMPBELL commonly operated rental pickup trucks obtained from AVIS/BUDGET Company, commonly registered under PV Holding Corp.  CAMPBELL routinely would switch rental vehicles over the course of the investigation.  The following observations are examples of JERALD CAMPBELL's use of rental vehicles while drug trafficking.

8.     On September 30, 2024, location data associated with CAMPBELL's cellular phone revealed that he was traveling back to Milwaukee, Wisconsin.  Physical surveillance of CAMPBELL was then conducted at the address of 3665 W College Avenue, Greenfield, Wisconsin.  At approximately 7:49 pm, a white Ford F-150 Lightening rental pickup truck bearing Illinois license plate [FP256815] (**Target Vehicle #1**) arrived from the north and backed into a parking stall near a white Volkswagen CC (known to be a vehicle commonly operated by CAMPBELL).  A male was observed dipping down into the vehicle.  At approximately 7:52 pm,

2

a sedan pulled up, pulled into east side of lot, north of pickup. The Ford F-150's lights extinguished momentarily before turning back on. At approximately 7:54 pm, the Ford F-150's lights were once again extinguished. Case agents observed JERALD CAMPBELL exit **Target Vehicle #1** wearing a dark sweatshirt with light graphics on the rear, baseball hat backwards with a dark duffle bag walks towards the southeast door of 3665 W College Avenue. At approximately 7:55 pm, the interior lights of 3665 W College Avenue Apt. 64, Greenfield, Wisconsin were turned on and movement could be observed through the unit's southern windows.

9.     On October 2, 2024, a federal arrest warrant was served to seize JERALD CAMPBELL and he was taken into custody at 10370 W Plum Circle Apt. 204, Hales Corners, Wisconsin 53130. During the knock and announce at the residence, KEISHA WILHITE answered the door and greeted law enforcement, while JERALD CAMPBELL could be observed moving back from the door to the bedroom prior to his arrest. **Target Vehicle #1**, which was rented by KEISHA WILHITE and utilized by JERALD CAMPBELL, was located on the slab at 10370 W Plum Tree Circle Apt. 204, Hales Corners, Wisconsin 53130 at the time of the service of the warrant. **Target Vehicle #1** was seized as evidence during the arrest of JERALD CAMPBELL, because law enforcement knew CAMPBELL would frequently use rental vehicles (especially vehicles rented by WILHITE) in his drug trafficking.

10.     Based upon affiant's training and experience, affiant also knows that it is common for drug traffickers to use vehicles to facilitate drug trafficking, and as such, it is common for controlled substances, paraphernalia, records, firearms, and other evidence of drug trafficking to be stored in such vehicles. Affiant knows that it is common for drug traffickers to use more than one vehicle so as to avoid detections by law enforcement. Based on affiant's training and experience, I also know and have participated in the execution of vehicle search warrants that have resulted in the recovery of evidence of drug trafficking, including evidence of ownership and control. Since CAMPBELL's drug trafficking followed this pattern of vehicle utilization, and CAMPBELL was utilizing **Target Vehicle #1** during the pendency of the charged drug conspiracy, law enforcement believes evidence of the drug conspiracy will likely be found in **Target Vehicle #1.**

<u>**Target Vehicle #2**</u>

3

11. A Wisconsin Department of Transportation (DOT) Check revealed that NICHOLS owns a 2014 White Jeep Grand Cherokee with a Wisconsin License plate of [AVZ8402], with a Vehicle Identification Number (VIN) of 1C4RJFBG1EC532090 (**Target Vehicle 2**). This vehicle was scene on multiple drug transactions, including a control buy on July 25, 2024, and referenced during several authorize interceptions of NICHOLS, using (262) 993-0926, further described below.

12. On July 24, 2024, at 7:29PM, NICHOLS had in incoming phone call from (414) 595-0141. This phone number is associated to MALIK NICHOLS' mother, NICOLE NICHOLS.

MALIK: I'm doing that what's it name tonight

NICOLE: Either way it goes I'm back [UI]

MALIK: You said you're back what?

NICOLE: I said either way it go, I'm not gonna be able to pay today anyways because it's too late now

MALIK: I'm doing that what's it name tonight

NICOLE: You doing a what babe?

MALIK: I'm doing that what's it name thing tonight

NICOLE: What's that?

MALIK: Imma, the Jeep

NICOLE: Oh that's what you're doing

MALIK: Yea I'm doing it tonight

NICOLE: You're doing insurance?

MALIK: Yea, so i'm just gonna need you to be on that shit with the claim and all that shit

4

NICOLE: Ok, so what you gonna do? Hit it? Or your gonna move it?

MALIK: Hit this mutha fucka, with me in it, I'm going to the hospital tonight

NICOLE: Huh?

MALIK: Funna hit this mutha fucka with me in it, I'm going to the hospital tonight

NICOLE: Ohhh, why do you have to go through that extent

MALIK: Make this money

NICOLE: Yea, but you know if you don't...well

MALIK: I don't give no fucks

NICOLE: You could of just totaled it yourself without an accident and just say somebody came and vandalized it and did it that way, because.... Just make sure you read your policy. How long have you had your policy?

MALIK: I had it for a little minute

NICOLE: Ohhh, you still in your rental?

MALIK: Nope, just took it back today

NICOLE: Is your other truck done?

MALIK: Nah, I ain't doing it no more, fuck all that shit. I'm gone [UI]

NICOLE: Get something brand new? Make sure you got. You got rental car reimbursement?

MALIK: Yea, I got max

NICOLE: You sure?

MALIK: I got max coverage, I even got GAP, I got everything. I even got um, I even got um.... Even if the other insurance is messed up, if they don't got no insurance.

5

NICOLE: Cuz I was like shit, you know the goodest pay is to have somebody hit it from the back

MALIK: I was just gone do it with me sitting in the car parked. Like someone just came and smacked it

NICOLE: Yea, you can do that too then get back in it and say the airbags deployed on it. But you don't have to have the airbags really deploy cuz them mutha fuckas hurt. Do you got a person to do it for you?

MALIK: [UI]

NICOLE: Ok. I just talk to you later imma have to sit and lay down for a minute, I'm a little stressed out

13.    Case agents believe this conversation to refer to MALIK NICHOLS discussing his plans to falsely report damage or theft of his 2014 white Jeep Grand Cherokee for the purpose of obtaining financial restitution from his insurance company.

14.    On July 25, 2024, at approximately 3:23 pm, while under the direction and control of FBI Milwaukee Area Safe Streets Task Force, an FBI confidential human source (CHS) purchased 3 grams of fentanyl and 3 grams of crack cocaine from NICHOLS (M/B DOB 09-29-1996) with $240.00 in pre-recorded U.S Currency. This transaction with NICHOLS occurred inside a White 2014 Jeep Grand Cherokee bearing a Wisconsin license plate of [AVZ8402] (**Target Vehicle #2**) in the area of N 40th Street and W Ruby Avenue within the City and County of Milwaukee.  While on surveillance case agents observed NICHOLS within the Jeep as he drove past case agents.

15.    On August 20, 2024, at approximately 2:06 pm, NICHOLS, using (262) 993-0926 received an incoming phone call from NICOLE NICHOLS, using (414) 595-0141.

MALIK: This shit bad boy shit bad. I like this Toyota. They might not get this motherfucker back.

NICOLE: Boy you could get your own. If its (UI) whatever you want. Order it from carmax if they ain't got it cause you ain't take no paper work

MALIK: What?

NICOLE: The Carmax

MALIK: Man I'm doing that insurance move tonight

NICOLE: Listen listen, stinker. You don't even have to tear that truck all you gotta do is hide

MALIK: I ain't tearing that up. I'm finna take the battery out and hide it

NICOLE: Thats all you gotta do

MALIK: Take the battery out hide it. Once I get my money cash the check out. Do all that. Once all this shit finalize and I got get the money for it. (UI) get all my credit. Saying that I got a paid car on my shit. My shit go right up. (UI) pull that motherfucker right back out and tell them oh I found my car. What they gone say. You can keep it sir. Oh you keep her they paid you out for that you can keep that car. Oh ok I could? whoo whoo whoo. Paint up the car and sell that motherfucker. I ain't want it. Give it to you shit. I don't need that truck. (UI) I'm finna use that shit fuck it. I don't want to cause loan. Nigga nigga gonna be paying off the loan for th rest of his life. Nigga the market gonna be damn near crash.

NICOLE: Put that first time home buyer credit you ain't (UI) interests rates go down.

MALIK: I thought the interest rates (UI) right now?

NICOLE: Hell no, they high because of inflation. They at 14%

16.     Case agents believe this conversation to refer to MALIK NICHOLS discussing his plans to falsely report damage or theft of his 2014 white Jeep Grand Cherokee for the purpose of obtaining financial restitution from his insurance company.

17.     October 2nd, 2024, case agents conducted an arrest operation of members of the WILLIAMS DTO, during which time MALIK NICHOLS was arrested at 4414 N 39th Street,

Milwaukee, Wisconsin. Case agents conducted a Mirandized interview of MALIK NICHOLS following his arrest at 4414 N 39th Street, Milwaukee, Wisconsin. During the course of the interview, NICHOLS disclosed the location of the Jeep (**Target Vehicle 2**) to case agents, stating the vehicle was located at 5322 N 58th street, Milwaukee, Wisconsin. Case agents went to 5322 N 58th street, Milwaukee, Wisconsin, spoke with the residents at the location and located NICHOLS's Jeep within a garage on that property. NICHOLS' Jeep was towed from the location of 5322 N 58th street to the Milwaukee County Sheriff's Office located at 10320 W. Watertown Plank Road, Wauwatosa, WI. Case agents followed the tow truck and NICHOLS' Jeep to the secure storage at the Milwaukee County Sheriff's Office Substation. On October 2, 2024, case agents contacted the National Insurance Crime Bureau and determined that MALIK NICHOLS had filed a fraudulent stolen automobile claim to National General Insurance on August 31, 2024, regarding the theft of his white 2014 Jeep Grand Cherokee.

18. Based upon training, experience, and familiarly with this investigation, I believe that evidence of NICHOLS' drug trafficking is contained within (**Target Vehicle #2**).

## TECHNICAL BACKGROUND REGARDING THE VEHICLE AND ITS INFOTAINMENT AND TELEMATICS SYSTEMS

19. Based on my training and experience, as well as discussions with other experienced law enforcement officers and witnesses, I have learned that:

    a. Many modern motor vehicles are equipped with sensors, cameras,[1] transmitters, and electronic control units (ECUs)[2] to monitor and manage vehicle operations,

---

[1] As of 2018, the US National Highway Safety Transportation Agency requires new motor vehicles sold in the United States to have backup cameras installed by the manufacturer.

[2] "ECU" is a generic term applied to any embedded computer that controls one or more electrical systems within a vehicle. ECUs are typically installed in a vehicle by the original equipment manufacturer during the manufacturing process. There are many types of ECUs, and as vehicles have more features each year, the number of ECUs in each motor vehicle increases. Newer motor vehicles can integrate as many as 150 ECUs, ensuring, in theory, that each part of the motor vehicle is running properly. Some examples of common ECUs include the Engine

8

track vehicle movement, and exchange information with other vehicles and infrastructure.[3] These systems also enable motor vehicles to interface with various types of mobile devices to facilitate the use of applications, including third-party navigation, wireless telephone, multimedia streaming, and the like. To perform these computing functions, modern motor vehicles collect, process, and store significant volumes of data.

b.   Two commonly installed ECUs within motor vehicles are infotainment and telematics systems—sometimes referred to as the Telematics Control Unit and the Infotainment Control Unit. These systems typically retain large amounts of user data within the vehicle.

c.   A vehicle's infotainment system combines hardware and software to provide entertainment features. Many infotainment systems allow drivers and passengers to connect their handheld electronic devices to the vehicle. When connected, the driver and/or passengers may gain access to, for example, Global Positioning System (GPS) navigation, video players, music streaming, voice calling, texting, and traffic data. Many systems enable talking hands-free with Bluetooth connectivity, listening to music, watching videos, or pulling up a mapped route to a destination. Many of these features are accessible via the (usually interactive) console located on the front dashboard of the vehicle.

---

Control Module, Transmission Control Module, Brake Control Module, and Suspension Control Module, as well as the Telematics Control Unit and Infotainment Control Unit.

[3]   The infotainment and telematics systems in motor vehicles are not the same as "black box" recorders. Black box recorders are called event data recorders (EDRs) or crash data recorders. These black box recorders can record vehicle speed, engine speed, steering angle, throttle position, braking status, force of impact, seatbelt status, and airbag deployment. In 2006, the US National Highway Traffic Safety Administration (NHTSA) adopted regulations requiring EDRs to uniformly collect certain crash data to assist crash investigators with accident reconstruction efforts. In 2012, NHTSA proposed requiring manufacturers to install EDRs in all new cars and trucks, but in 2019, the NHTSA withdrew the proposal because automakers have voluntarily installed the devices in nearly all vehicles.

9

d.  A vehicle's telematics system typically collects and stores diagnostic data from various systems (other ECUs) within the vehicle, including historical navigation points, speed, and event data. Historical event data may include information regarding when the car's trunk, doors, and windows opened and closed, when headlights turned on and off, and when gears changed or brakes were engaged.

e.  The main difference between the infotainment and telematics systems is that the infotainment system is about entertainment for the occupants of the vehicle, and the telematics system is for collecting and reporting (transmitting) information— such as vehicle use data, maintenance requirements, and automotive servicing— about the vehicle. Typical telematics data may include turn-by-turn navigation, remote access, emergency calling, and maintenance notifications. Examples of vehicle telematics systems include General Motors' OnStar, BMW's "Assist," and Mercedes' "mbrace." Some of these systems are integrated multimedia navigation and telematics systems in one (combined infotainment/telematics systems), like Toyota's "Entune" and Ford's "Sync."

f.  The data generated, collected, transmitted, and retained by motor vehicles can provide valuable information in law enforcement investigations of crimes. For example, many infotainment systems support the importation of content and other data information from a particular user's mobile device. Such data may include content that may provide attribution to particular user(s), including mobile device identifiers, wireless telephone numbers, user account details, passwords, user voice profiles, contact lists, call logs, text messages, pictures, e-mail, videos, web history, GPS coordinates, and other historical navigation information.

g.  I am aware that the computers (ECUs) within many motor vehicles store data for prolonged periods of time. Furthermore, even after a previously connected mobile device is removed from the physical vehicle, data may remain within the digital storage of the system. Such stored data can be used to identify locations, victims, witnesses, associates, and co-conspirators and may include communications and images of criminal activity. In sum, a forensic examination of a motor vehicle's

10

infotainment and telematics systems may reveal the vehicle's GPS location information, movements, operations, and user data at critical moments before, during, and after the commission of a crime.

h. It may be necessary, temporarily, to remove trim and other components of the either Target Vehicle to access the information subject to search. It may also be necessary to repair, replace, reconnect, replace and otherwise modify either Target Vehicle to access the information subject to search. It may also be necessary to employ advanced forensic processes to bypass locked display screens and other data access restrictions. Advanced processes may include potentially destructive forensic techniques used to remove memory chips from computers and other electronic storage containers that may be found within either Target Vehicle. This warrant authorizes the same.

i. Furthermore, it may be necessary to return to either Target Vehicle and reconnect the infotainment and telematics systems to subject Target Vehicle's power source to perform the extraction using forensic software. This is because there are various computer networks working simultaneously when a vehicle is powered on, and in some vehicles, the infotainment and telematics systems require the other networks to work in tandem to complete the data extraction. This warrant authorizes the same.

## **CONCLUSION**

20.     I submit that this affidavit supports probable cause for a warrant authorizing the search of **Target Vehicle #1** and **Target Vehicle #2** (as described in Attachment A) to seize the data described in Attachment B.

11

## <u>ATTACHMENT A</u>

The property to be searched is a White, 2024, Ford F-150 Lightening bearing VIN number 1FTVW3LK9RWG06118 ("**Target Vehicle #1**") and a White, 2014, Jeep Grand Cherokee bearing VIN number 1C4RJFBG1EC532090 ("**Target Vehicle #2**").

# ATTACHMENT B

*Items to be Seized*

Evidence relating to violations of Title 21, United States Code, Sections 841 and 846, including but not limited to:

1. Marijuana, and any other controlled substance, packaging materials and materials used to prepare heroin and other controlled substances for distribution, controlled substances paraphernalia, and other contraband related to drug trafficking and distribution;

2. Firearms including pistols, handguns, shotguns, rifles, assault weapons, machine guns, magazines used to hold ammunition, silencers, components of firearms including laser sights and other components which can be used to modify firearms, ammunition and ammunition components, bulletproof vests, and any and all documentation related to the purchase of such items;

3. Proceeds of drug trafficking activities, including United States Currency, financial instruments, jewelry, documents and deeds reflecting the purchase or lease of real estate, vehicles, jewelry or other items obtained with the proceeds from organized criminal and drug trafficking activities;

4. Drug or money ledgers, drug distribution or customer lists, drug supplier lists, correspondence, notations, logs, receipts, journals, books, records and other documents noting the prices, quantity, and/or times when controlled substances were obtained transferred or sold distributed, and/or concealed;

5. Indicia of occupancy or ownership of the vehicle and things described in the warrant, including but not limited to bills, loan payment receipts, lease or rental agreements, and keys.

2

6. Cellular telephones and all electronic storage areas on the device including text messages, contact lists, digital video recordings or other areas that may contain evidence of drug trafficking or firearm possession or use.

7. Stored electronic data, information, images, and related digital storage, and/or vehicle diagnostic data from electronic systems within either Target Vehicle, including, but not limited to data regarding: unique device identifiers; media files; call logs; contacts; SMS; Bluetooth connections; USB connections; voice commands; voice recordings; voice calling; web browser history; Wi-Fi connections; speech recognition; time updates; track logs; traction events; traffic updates; stop/start log; GPS warnings; hard acceleration; hard braking; light status; odometer reading; gear shifts; historical navigation data; historical speed data; historical event data; and data streaming services and related content.

For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

   a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

3

c.  evidence of the lack of such malicious software;

d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h.  evidence of the times the COMPUTER was used;

i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.  records of or information about Internet Protocol addresses used by the COMPUTER;

l.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.  contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies). The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware. The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media. This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

5